1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11
| BRUCE FUGATE, | ) | No. C 06-0277 MMC (PR) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS PHILP** |
| | ) | **AND HUMBOLDT COUNTY'S MOTION** |
| v. | ) | **FOR SUMMARY JUDGMENT; GRANTING** |
| | ) | **DEFENDANT TRANSCOR'S MOTION TO** |
| | ) | **DISMISS OR, IN THE ALTERNATIVE,** |
| GARY PHILP, SHERIFF, et al., | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | **(Docket Nos. 37 & 40)** |
| _____ | ) | |

On January 17, 2006, plaintiff, a "sexually violent predator" ("SVP") under

California's Sexually Violent Predator Act (Cal. Welf. & Inst. Code §§ 6600, et seq.)

("SVPA"), and proceeding pro se, filed the above-titled civil rights action pursuant to 42

U.S.C. § 1983.  Plaintiff alleges that defendants violated his constitutional rights by

transporting and housing him under conditions that are unlawful as applied to civil detainees.

On June 12, 2006, the Court found plaintiff had stated cognizable claims against defendants

Humboldt County Sheriff Gary Philp ("Philp"), the Humboldt County Board of Supervisors

("Humboldt County"), and Transcor America, LLC. ("Transcor")[1].  Now before the Court

are the following motions: (1) defendants Philp and Humboldt County's motion for summary

judgment, and (2) defendant Transcor's motion to dismiss or, in the alternative, motion for

---

[1]In his complaint, plaintiff erroneously sued Transcor as Trans Corp Transportation Company.

United States District Court
For the Northern District of California

1    summary judgment.  Plaintiff has filed opposition in response to both motions, and

2    defendants have filed replies.

3    **FACTUAL BACKGROUND**[2]

4         On March 24, 2003, plaintiff was temporarily transferred from Atascadero State

5    Hospital to the Humboldt County Correctional Facility ("HCCF") for civil commitment

6    proceedings pursuant to the SVPA.  (Compl. at 8.)  He was transported by defendant

7    Transcor in a van in which he was not separated from penal detainees and/or prisoners.

8    (Compl. at 8.)

9         On March 25, 2003, plaintiff arrived at the HCCF, where he was subjected to an

10   "unclothed body search" and a "visual body cavity search."  (Compl. at 6.)

11        On March 26, 2003, plaintiff was classified and placed in protective custody in

12   Special Housing Unit ("SHU") S529 at the HCCF.  (Id. at 7; Decl. Capt. Melinda

13   Ciarabellini Supp. Defs. Philp and Humboldt County's Mot. S. J. ("Ciarabellini Decl.") ¶ 15.)

14   Plaintiff was not segregated from other detainees while in protective custody; he shared a

15   two-man cell with a penal detainee and/or prisoner during the approximately fifteen months

16   he was housed in the protective custody unit.  (Compl. at 6.)

17        On June 1, 2004, following his commitment as an SVP, plaintiff was released from the

18   custody of the HCCF; he was transported back to Atascadero State Hospital by Transcor in a

19   van in which he was not separated from penal detainees and/or prisoners.  (Id. at 8;

20   Ciarabellini Decl. ¶¶ 21-22.)

21        In the instant action, plaintiff claims defendants violated his constitutional rights by

22   transporting him with penal detainees and/or prisoners, housing him with penal detainees

23   and/or prisoners, and subjecting him to an unconstitutional search.

24   ///

25   ///

26   ///

27

28        [2]The facts set forth in the background section are not disputed by the parties.

2

**DISCUSSION**

A.    Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting

**United States District Court**
For the Northern District of California

1  evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec.

2  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

3       The Court treats the allegations in plaintiff's verified complaint as an opposing

4  affidavit to the extent such allegations are based on plaintiff's personal knowledge and set

5  forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 &

6  nn.10-11 (9th Cir. 1995).

7  B.    The SVPA

8       California's SVPA is codified at California Welfare & Institutions Code §§ 6600-

9  6609.3.  In Hydrick v. Hunter, 500 F.3d 978, 983 (9th Cir. 2007), petition for cert. filed,

10  76 U.S.L.W. 3410 (U.S. Jan. 17, 2008) (No. 07-958), the Ninth Circuit summarized how the

11  SVPA operates.  The SVPA defines an SVP as a person "convicted of a sexually violent

12  offense against two or more victims for which he or she received a determinate sentence and

13  who has a diagnosed mental disorder that makes the person a danger to the health and safety

14  of others," i.e., a person who is "likely [to] engage in sexually violent criminal behavior."  Id.

15  at 983.  At least six months before a person who has committed the predicate offenses is to

16  complete his sentence, he is evaluated by the Department of Corrections and Department of

17  Mental Health.  Id.  If those two departments agree that the person evaluated may be an SVP,

18  a petition for commitment may be filed by the district attorney or counsel for the county in

19  which the evaluated person was convicted.  Id.  If that person is found by a jury to be an

20  individual who poses a danger to the health and safety of others, he is civilly committed for

21  an indefinite period to commence after his criminal sentence is fulfilled.  Id.

22       Once civilly committed, SVPs undergo a five-phase treatment program.  Id. at 983-84.

23  Each year, an SVP has a right to a show cause hearing to determine whether his commitment

24  should be continued.  Id. at 984.  If it is found that the SVP continues to be a danger to the

25  health or safety of the community, he is committed for two years from the date of the finding.

26  Id.  These successive periods of commitment can be continued indefinitely, or until the SVP

27  completes all five phases of treatment; upon successful completion of all five phases of

28  treatment, the SVP is conditionally released under the supervision of the California Mental

4

1    Health Department.  Id.

2    C.      Sheriff Philp and Humboldt County's Motion for Summary Judgment

3           Plaintiff claims that when he was at the HCCF, defendants Philp and Humboldt

4    County violated his constitutional rights by subjecting him to an unreasonable search and

5    housing him with penal detainees and/or prisoners.  Defendants argue summary judgment

6    should be granted in their favor because (1) plaintiff's suit is barred by the applicable statute

7    of limitations, (2) plaintiff has not produced evidence that creates a genuine issue of material

8    fact with respect to his assertions that defendants' actions violated his constitutional rights,

9    and (3) defendants are entitled to qualified immunity.

10          1.      Statute of Limitations

11          Section 1983 does not contain its own limitations period, see Elliott v. City of Union

12   City, 25 F.3d 800, 802 (9th Cir. 1994); the appropriate period is that of the forum state's

13   statute of limitations for personal injury torts, see Wilson v. Garcia, 471 U.S. 261, 276

14   (1985).  In the event the state has multiple statutes of limitations for different torts, federal

15   courts considering claims brought pursuant to § 1983 borrow the general or residual statute

16   for personal injury actions.  See Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999).  Effective

17   January 1, 2003, California's general residual statute of limitations for personal injury actions

18   is two years.  See Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004) (citing Cal. Code

19   Civ. Proc. § 335.1).[3]  Additionally, a federal court must give effect to a state's tolling

20   provisions.  See Hardin v. Straub, 490 U.S. 536, 543-44 (1989).

21          A claim accrues when the plaintiff knows or has reason to know of the injury that

22   forms the basis of the action.  See TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir.

23   1999); Elliott, 25 F.3d at 802.  Here, the injuries that form the bases of plaintiff's claims

24   against defendants Philp and Humboldt County are defendants' assertedly unreasonable

25   search of plaintiff when plaintiff arrived at the HCCF on March 25, 2003, and defendants'

26   placement of plaintiff in housing with penal detainees and/or prisoners at the HCCF from

27   ────────────────────

28        [3]Prior to January 1, 2003, the limitations period was one year.  See Maldonado, 370
     F.3d at 954 (citing Cal. Civ. Proc. Code § 340(3)).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   March 25, 2003 until June 1, 2004.  Because plaintiff knew of said injuries on March 25,

2   2003, such date is the date on which his claims accrued.  As plaintiff had two years from the

3   date on which his claims accrued in which to file his complaint against defendants, he was

4   required to do so by March 25, 2005; plaintiff did not, however, file his complaint until

5   January 17, 2006.

6          Although plaintiff did not file his complaint within two years of the date on which his

7   claims accrued, the Court finds that, under Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004), the

8   complaint is not time-barred, because plaintiff is entitled to equitable tolling of the statute of

9   limitations for the entire period during which he was confined at the HCCF.  In Jones, the

10  plaintiff claimed that his right to due process had been violated by the conditions of his

11  confinement at a county jail while he awaited adjudication as an SVP; the defendants argued

12  plaintiff's claims were time-barred.  Looking to California's statutory tolling scheme, the

13  Ninth Circuit found that although under California Code of Civil Procedure section 352.1,

14  California law provides for tolling of the statute of limitations for a period of up to two years

15  based on the disability of imprisonment, such statutory tolling does not apply to civil

16  detainees.  Id. at 927.  The Ninth Circuit held, however, that because the impediments to

17  litigation imposed on continuously confined civil detainees are at least equal to those

18  imposed on individuals detained pursuant to criminal process, California's equitable tolling

19  doctrine "operates to toll a statute of limitations for a claim asserted by a continuously

20  confined civil detainee who has pursued his claims in good faith."  Id. at 930.

21         Defendants argue Jones does not apply in the instant case because the restrictions

22  placed on the plaintiff therein were harsher than those placed on plaintiff here.  The Court

23  finds defendants' argument unpersuasive; the impediments to litigation that plaintiff faced

24  were the same as those faced by penal detainees and/or prisoners incarcerated at the HCCF,

25  to whom the two-year statutory tolling provision based on the disability of imprisonment

26  applies.  Consequently, as defendants do not argue that plaintiff did not pursue his claims in

27  good faith, and there is no indication from the record that he did not do so, the Court finds

28  plaintiff is entitled to equitable tolling for the period of his confinement at the HCCF.  It is

1   undisputed that such period continued until June 1, 2004, when, after plaintiff was found by a

2   jury to be an SVP, plaintiff was transferred back to Atascadero State Hospital; thus, the

3   statute was equitably tolled until that date, at which time the statute began to run and plaintiff

4   had two years, or until June 1, 2006, to file his complaint.  As noted, plaintiff filed his

5   complaint on January 17, 2006.  Accordingly, when equitable tolling is applied, the

6   complaint is timely.

   2.   Plaintiff's Claims

   a.   Unreasonable Search

9   Plaintiff has presented evidence, in the form of his statement in his verified complaint,

10  that he was "subjected to an unclothed Body Search as well as a Visual Body Cavity Search"

11  when he arrived at the HCCF from Atascadero State Hospital on March 25, 2003.[4]  (Compl.

12  at 6.)

13  The Fourth Amendment right to be secure against unreasonable searches and seizures

14  extends to SVPs.  Hydrick, 500 F.3d at 993.  The reasonableness of a particular search or

15  seizure is determined by reference to the detention context and is a fact-intensive inquiry.  Id.

16  At the outset, defendants argue plaintiff has failed to present evidence supporting a

17  basis for liability against the individual who conducted the search because he does not

18  identify said individual.  Plaintiff does not appear to be asserting a claim against the

19  individual who conducted the search, however; rather, based on the allegations in his

20  complaint and argument in his opposition papers, he appears to be asserting a claim for

21  municipal liability based on an HCCF policy of conducting strip searches and visual cavity

22  searches on detainees arriving from other facilities.  In particular, plaintiff, as defendants

23  note, does not name in his complaint the individual who conducted the search, nor does he

24  identify a "Doe" defendant to be named later; he does allege, however, that Sheriff Philp, in

25  his capacity as a policymaker for the HCCF, was responsible for the search.  (Compl. at 5 ¶

26  1.)  Similarly, in his opposition papers, plaintiff does not purport to identify the individual

27

28      [4]Defendants refer to an unclothed body search as a "strip search"; for purposes of
   consistency and clarity, the Court hereinafter will do so as well.

United States District Court
For the Northern District of California

conducting, or include any reference to the specifics of, the search, nor has he indicated he requires additional time to discover such information pursuant to Federal Rule of Civil Procedure 56(f). Further, plaintiff makes clear in his opposition that he is not objecting to the manner in which the search was conducted; rather, he argues, it was unreasonable to search him at all because he had been transferred from a secure facility (Atascadero State Hospital), he had been thoroughly searched prior to leaving said facility, and he was transported directly into the custody of the HCCF under constant supervision. Accordingly, the Court will address plaintiff's claim as one for municipal liability based on an unconstitutional policy of subjecting detainees, arriving at the HCCF from other facilities, to strip searches and visual cavity searches.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom results in a violation of a constitutional right. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). Under Monell, to impose municipal liability under § 1983 for a violation of a constitutional right, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that such policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that such policy was the moving force behind the constitutional violation. See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

Here, the Court must make the initial determination whether, under the facts as viewed in a light most favorable to plaintiff, subjecting plaintiff to a strip search and a visual cavity search when he arrived at the HCCF was unconstitutional. A strip search that includes a visual body cavity search complies with the requirements of the Fourth Amendment so long as it is reasonable. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Bell, the Supreme Court evaluated the constitutionally of a blanket policy allowing visual body cavity searches, without regard to individualized suspicion, of all inmates at the county jail, including pretrial detainees, after every contact visit with a person from outside the institution. Id. at 559-60. The Supreme Court upheld the policy because the possibility of smuggling drugs, weapons,

and other contraband into the institution presented significant and legitimate security

interests.  Id.  In finding that the searches allowed by the policy were reasonable under the

Fourth Amendment, the Supreme Court employed the following balancing test:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 559.

Here, defendants, without conceding plaintiff was subjected to any search upon his

arrival at the HCCF, argue that conducting a strip search and visual cavity search upon

petitioner's arrival would have been reasonable based on the HCCF's legitimate security

interests.  In support of their argument, defendants offer the declaration of Melinda

Ciarabellini ("Ciarabellini"), the Captain of the HCCF.  (Ciarabellini Decl. ¶ 1.)  Ciarabellini

states the following:

> The HCCF has no information concerning plaintiff's allegation that he was subjected to a "strip search" upon his arrival at the HCCF.  Plaintiff Fugate arrived at the HCCF on a State Custody Transfer Order from the Atascadero State Hospital, a state detention facility, and was a convicted felon.  It is a common practice for individuals from state detention facilities, such as Atascadero State Hospital, to attempt to smuggle contraband into [the] HCCF.  As a matter of policy, strip searches in the HCCF are conducted based on the need and within legal limitations to maintain security and to prevent the introduction of weapons and contraband into the facility.  Detainees are not arbitrarily subjected to unnecessary strip or body cavity searches.  In addition, all strip and visual body cavity searches must be conducted in an area of privacy so that the search cannot be observed by any persons not participating in the search.

(Ciarabellini Decl. ¶ 20.)

In neither his verified complaint nor his opposition does plaintiff produce evidence to

contradict defendants' evidence that it is a common practice for individuals from state

detention facilities such as Atascadero State Hospital to attempt to smuggle contraband and

weapons into the HCCF.  Rather, as noted above, he argues that the search was unreasonable

because he had come from a secure facility where he had already been searched, and that he

had been transported directly from that facility to the HCCF while under constant

9

United States District Court
For the Northern District of California

1 | supervision.

2 |     The Court finds plaintiff has failed to create a genuine issue of material fact as to

3 | whether he suffered a violation of a constitutional right when he was searched.  In that

4 | regard, the Court finds persuasive the analysis provided by the district court in <u>Johannes v.</u>

5 | <u>Alameda County Sheriff's Dept.</u>, No. C 04–0458 MHP, 2006 WL 2504400 (N.D.Cal.

6 | Aug. 29, 2006).  In <u>Johannes</u>, the plaintiff, an individual awaiting civil commitment

7 | proceedings as an SVP, was transferred to the Alameda County Jail from Atascadero State

8 | Hospital pursuant to a court order, because he was needed as a witness to testify in another

9 | person's trial.  <u>Id.</u> at *1.  Although Johannes had been pat-searched before leaving

10 | Atascadero State Hospital, he was again pat-searched when he arrived at the county jail and

11 | was subjected to a strip search and visual body cavity inspection the next day.  <u>Id.</u>  Johannes

12 | also was subjected to a strip search and visual body cavity search each time he returned from

13 | court, resulting in a total of eight such searches while he was at the county jail.  <u>Id.</u>  The

14 | searches were conducted pursuant to a policy requiring all inmates who had been outside of

15 | the facility to be strip searched and visually inspected upon their return.  <u>Id.</u> at *4.

16 |     In determining whether the search policy applied to Johannes violated the Fourth

17 | Amendment, the district court balanced the need for the search against the invasion of

18 | Johannes's privacy rights.  Based on the undisputed evidence that detainees can and do

19 | attempt to bring contraband into the county jail, the district court concluded the policy was

20 | reasonable, finding as follows:

21 |         The most important factor in the analysis is that Johannes had been outside the

22 |         physical confines of the county jail just before each time he was searched.  His contacts with the outside world provided him with opportunities to obtain

23 |         contraband before he entered the jail from Atascadero and before he returned from court.  The existence of these opportunities to obtain contraband provided

24 |         a legitimate basis for application of defendants' strip search policy to Johannes.

25 | <u>Id.</u> at *12.

26 |     As part of its analysis, the district court gave special consideration to Johannes's status

27 | as an SVP; specifically, the district court noted that (1) the planned nature of Johannes's

28 | transfer from Atascadero State Hospital to the County Jail gave him the time to plan and

organize smuggling of contraband into the County Jail if he was so inclined; (2) Johannes's time in custody at the County Jail was not expected to be brief; and (3) Johannes had a lengthy and continuous history of incarceration that had led him to be classified as criminally sophisticated upon his arrival at the County Jail.  Id.

Similarly here, the evidence is undisputed that plaintiff was transferred to the HCCF from Atascadero State Hospital; individuals arriving from state detention facilities such as Atascadero State Hospital attempt to smuggle contraband and weapons into the HCCF; and defendants employed a search policy designed to protect both the legitimate security interests threatened by such smuggling and the privacy interests of the individual being searched. Further, and similar to the record before the court in Johannes, the evidence is undisputed that plaintiff knew in advance that he would be transferred from Atascadero State Hospital to the HCCF; his period in custody at the HCCF was not expected to be brief (he remained there for approximately fifteen months until his commitment proceedings were completed); and plaintiff's "rap sheet" showed that he was a registered sex offender with felony convictions for sex crimes and had been in the custody of the HCCF on at least four prior occasions related to sex crimes.  (See Ciarabellini Decl. ¶ 15.)  Based on this evidence, the Court concludes plaintiff has not created a genuine issue of material fact as to his claim that his constitutional rights were violated by reason of his having been subjected to a search at the HCCF.

Moreover, even if the particular search in question did result in a constitutional violation, plaintiff's claim of municipal liability must fail because he has not presented evidence showing the search was the result of an unconstitutional policy.  Although the Court is not persuaded by defendants' argument that plaintiff has failed to establish the existence of any HCCF policy,[5] for the reasons discussed above, the Court finds plaintiff has not raised a

---

[5] Although the evidence does not show that defendants had a blanket policy of subjecting every individual who arrived at the HCCF to a strip search and a visual body cavity search, the evidence, as noted, does show that (1) defendants had a policy of conducting such searches as needed to prevent the introduction of weapons and contraband into the facility, and (2) it was a common practice for individuals from state detention

United States District Court
For the Northern District of California

genuine issue as to whether such policy was unconstitutional.  As discussed, defendants have produced undisputed evidence that individuals arriving from state detention facilities attempt to smuggle contraband and weapons into the HCCF, that the HCCF conducts strip searches or visual body cavity searches as needed to prevent such smuggling, that detainees are not arbitrarily subjected to unnecessary strip searches or body cavity searches, and that all strip searches and visual body cavity searches are conducted in an area of privacy to ensure that the search cannot be observed by persons not participating in the search.  Such a policy is reasonably related to the HCCF's interest in maintaining security.  See Bell, 441 U.S. at 540. Accordingly, even if the particular search at issue herein could be characterized as unconstitutional, plaintiff has failed to show such search was conducted pursuant to an unconstitutional policy.

As plaintiff has not created a genuine issue of material fact as to whether his constitutional rights were violated as the result of an unconstitutional municipal policy, summary judgment on plaintiff's unreasonable search claim will be granted in favor of defendants.

        b.    Conditions of Confinement

Plaintiff claims defendants violated his right to due process by housing him with penal detainees and/or prisoners at the HCCF.  Defendants do not dispute that plaintiff was housed with penal detainees and/or prisoners; they argue they are entitled to summary judgment because (1) plaintiff waived his right to bring this claim by not telling defendants during the classification process that he needed to be housed alone, and by not filing, while he was at the HCCF, an administrative grievance contesting the conditions of his confinement, and (2) the evidence shows defendants had legitimate, non-punitive interests justifying plaintiff's conditions of confinement, and that the restrictions imposed on plaintiff were not excessive in relation to those interests.

_____

facilities, such as Atascadero State Hospital, to attempt to smuggle contraband into the HCCF.  The Court thus concludes plaintiff was searched pursuant to an HCCF policy allowing for a case-by-case determination as to when a search was required.

1

**United States District Court**
For the Northern District of California

i.    <u>Waiver</u>

Defendants argue plaintiff has waived his claim that he should not have been housed with penal detainees and/or prisoners because during his intake interview he stated he had no objection to being housed with other inmates and, thereafter, he did not seek to alter his housing situation by filing an administrative grievance.  In support of their argument, defendants rely on the decision of the district court in <u>Meyers v. Pope</u>, No. CIV S-03-0241 LKK GGH P, 2006 WL 1867656 (E.D. Cal. Jul. 5, 2006).  In <u>Meyers</u>, the plaintiff, an SVP, claimed his placement in administrative segregation during the eleven months he was at the Shasta County Jail pending recommitment proceedings amounted to punishment in violation of due process.  <u>Id.</u> at *1.  The district court found that because the plaintiff had repeatedly refused offers by jail officials to house him in protective custody under less restrictive conditions, he had waived his claim.  <u>Id.</u> at *8.  Specifically, the district court held that because there was no evidence to suggest the offered protective custody would not meet constitutional standards for civil detainees, the plaintiff could not refuse to be housed in protective custody and then claim jail officials had violated his constitutional rights by keeping him in administrative segregation.  <u>Id.</u> at *8-9.

The instant case is distinguishable from <u>Meyers</u> in that there are no allegations herein that after plaintiff was placed in protective custody he was offered less restrictive conditions of confinement, that such conditions of confinement would have met constitutional standards for housing SVPs, and that plaintiff refused to be rehoused.  Rather, defendants contend, plaintiff should not be allowed to proceed because he did not object to being housed with other inmates.  Even if such lack of objection could be equated with the declination in <u>Meyers</u>, however, defendants submit no evidence as to the availability of alternative housing that would meet constitutional standards for SVPs.  In short, as plaintiff did not refuse alternative constitutionally adequate housing, the Court finds he did not waive his challenge to the conditions of his confinement in protective custody by failing to object to being housed with other inmates.

With respect to defendants' argument that plaintiff waived his claim by failing to file

United States District Court
For the Northern District of California

an administrative grievance objecting to the conditions of his confinement, plaintiff asserts he submitted to the Department Head of Classification, "Inmate Request Forms" objecting to his housing placement, in response to which he was told his housing was appropriate. Defendants contend plaintiff did not file an administrative grievance because plaintiff's objections were not submitted on an "Inmate Grievance Form" and presented to the HCCF Housing Officer, as required. The Court need not resolve the question whether plaintiff properly pursued an administrative grievance with respect to his housing placement; even if he did not, he has not waived his constitutional claim by failing to do so. See Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000) (holding SVPs are not required to exhaust administrative remedies before filing suit in federal court).

Accordingly, the Court will proceed to review the merit of plaintiff's argument that the conditions of his confinement in protective custody violated due process.

ii.    Interests Justifying Conditions of Confinement

The Fourteenth Amendment applies to conditions of confinement claims brought by individuals who have not been convicted of a crime. Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004). Consequently, individuals detained on criminal charges may not be subjected to conditions that amount to punishment prior to an adjudication of guilt. Id. Similarly, "within the bounds of professional discretion," individuals who have been involuntarily committed may not be subjected to conditions of confinement that amount to punishment. Hydrick, 500 F.3d at 997; the conditions and duration of confinement must "bear some reasonable relation to the purpose for which [such] persons are committed," see id. (internal quotation and citation omitted). Further, individuals who are awaiting civil commitment proceedings are entitled to protections at least as great as those afforded to civilly committed individuals and to individuals accused but not convicted of a crime. Jones, 393 F.3d at 931-32.

In short, under Hydrick and Jones, individuals who are either awaiting commitment or have been committed as SVPs may not be subjected to conditions greater than those to which a civilly committed individual may be subjected and individuals who have been civilly committed as SVPs may not be subjected to conditions of confinement that amount to

United States District Court
For the Northern District of California

1  punishment, Hydrick, 500 F.3d at 997 (holding substantive due process protections of the

2  Fourteenth Amendment apply to SVPs).  Punitive conditions may be shown where

3  challenged restrictions are expressly intended to punish, where they are excessive in relation

4  to a non-punitive purpose, or where they are employed to achieve objectives that could be

5  accomplished by alternative and less harsh methods.  Jones, 393 F.3d at 932.  Additionally, a

6  presumption of punitive conditions of confinement applies when an individual awaiting

7  adjudication as an SVP is confined "in conditions identical to, similar to, or more restrictive

8  than those in which his criminal counterparts are held," id., or "in conditions more restrictive

9  than those the individual would face following SVPA commitment," id. at 933.

10      As noted, plaintiff alleges he was subjected to punitive conditions of confinement

11  because he was housed with penal detainees and/or prisoners during his temporary

12  confinement at the HCCF.  Although it is undisputed that plaintiff, at the time he was

13  transferred from Atascadero State Hospital to the HCCF, was facing proceedings to have him

14  committed as an SVP, neither party has clarified whether plaintiff's status when he arrived at

15  the HCCF was that of an individual who was being committed for the first time as an SVP, or

16  that of an individual who had been committed as an SVP and was facing recommitment.[6]

17  Because the record is unclear, the Court in an abundance of caution assumes, arguendo,

18  plaintiff was not serving a term of civil commitment when he arrived at the HCCF, but was a

19  civil detainee awaiting adjudication as an SVP.  Consequently, the Court will apply to

20  plaintiff's claims the presumption of punitive conditions of confinement set forth in Jones.[7]

21      The Jones presumption is a rebuttable one; when such a presumption arises, the

22  defendant must be given an opportunity to show that legitimate, non-punitive interests

23  justified the conditions to which an SVP was subjected, and that the restrictions imposed

24

25      [6]Under California law, recommitment proceedings do not have to be completed prior
   to the end of the original commitment term, and the prisoner is not entitled to release during
26  the time between the end of the original commitment and the beginning of the new
   commitment.  See People v. Ramirez, 70 Cal. App. 4th 1384, 1389-91 (1999).
27

28      [7]As discussed above, under this standard plaintiff could not be subjected to more
   restrictive conditions than those imposed on an individual already committed as an SVP.

**United States District Court**
For the Northern District of California

1   upon the SVP were not excessive in relation to those interests.  Id.  Here, defendants assert

2   they had legitimate, non-punitive interests justifying plaintiff's placement in the HCCF

3   protective custody housing unit and that the restrictions imposed upon plaintiff while he was

4   housed in protective custody were not excessive in relation to those interests.  In support of

5   defendants' argument, Ciarabellini, Captain of the HCCF, offers the following evidence as to

6   the manner in which housing decisions are made for HCCF inmates in general, and how the

7   decision as to plaintiff's housing, in particular, was made.

8        The HCCF is a Type II Local Detention Facility that houses inmates pending their

9   arraignment, during trial, and upon sentencing.  Inmates at the HCCF may be assigned to live

10  either in the general population housing unit, the protective custody housing unit, or in

11  administrative segregation.  The HCCF operates under a philosophy of "Direct Supervision."

12  Direct supervision allows inmates in the general population housing unit to live in open

13  dormitories; during the day they are together in "dayrooms" and at night they sleep in two-

14  person cells.  (Ciarabellini Decl. ¶¶ 4-5.)  Inmates in both the general population and

15  protective custody housing units have access to dayroom activities that include playing cards,

16  board games, drawing, reading, and writing letters.  Each housing unit adjoins a semi-

17  outdoor recreation room, equipped with basketball and stationary exercise equipment.  (Id. ¶

18  5.)

19       Inmates who present an unusual risk or hazard to prison staff or other inmates, or who

20  need protection from other inmates, are housed in the administrative segregation unit; they

21  live in single-person cells or, if necessary, alone in a two-person cell.  Because of the need to

22  isolate segregated inmates from others, dayroom access for administratively-segregated

23  inmates is generally more limited than for non-segregated inmates.  (Id.)

24       Plaintiff arrived at the HCCF pursuant to a court order directing that he be transported

25  from Atascadero State Hospital to the HCCF for further proceedings regarding his

26  commitment as an SVP.  (Id. ¶ 8.)  Upon his arrival at the HCCF, plaintiff was booked and

27  processed through medical pre-screening intake.  He was then processed through Stage I

28  Classification.  (Id. ¶¶ 9-10.)  Classification in the HCCF is the process of managing the

**United States District Court**
For the Northern District of California

inmate population by using objective criteria and as much information as possible to determine the least restrictive and appropriate housing and program assignments for inmates that also provide for the safety and security of the facility, inmates, staff and volunteers.  (Id. ¶ 11.)  On the Stage I Classification form completed by plaintiff, he answered "No" to the question "Is there anyone in the facility that you <u>cannot</u> be housed with?"  (Id. ¶ 12 & Ex. C.)

The next day, plaintiff went through the Stage II Classification process, which consists of a one-on-one interview conducted by a trained classification officer; the interview is designed to assist with determining appropriate housing and program placement for the particular inmate.  Information obtained during the Stage II Classification process includes personal background information, criminal history and prior jail or prison terms, education and educational needs, special medical or mental health care needs, program needs, past behavior in custody, past housing and work assignments in custody, and current charges and circumstances of arrest, if applicable.  (Id. ¶ 13.)

The decision was made to house plaintiff in protective custody in SHU S529, a two-man cell unit with a dayroom and an adjoining semi-outdoor recreation room.  The protective custody afforded by SHU S529 is appropriate for detainees who may be prone to assault by others and therefore require maximum security and special designated housing.  Plaintiff's "rap sheet" showed he was a registered sex offender with felony convictions for sex crimes with a child under fourteen years old; further, plaintiff had previously been in the HCCF's custody on at least four prior occasions related to sex crimes.  Consequently, for plaintiff's safety, it was determined that he would be appropriately classified for placement in protective custody and housed in SHU S529.  (Id. ¶ 15.)

It was not possible to segregate plaintiff from penal detainees at the HCCF without restricting plaintiff's privileges and access to programs.  Because the HCCF operates as a direct supervision facility with open dayrooms, it does not have a separate housing unit for SVPs.  Typically, the HCCF houses no more than one SVP at a time, and frequently houses no SVPs.  Completely segregating plaintiff from penal detainees in the facility would have restricted his out-of-cell time and related privileges, such as dayroom access, recreation room

United States District Court
For the Northern District of California

1   access, visitation, and his ability to attend inmate programs.  Moreover, housing plaintiff in

2   the general population open-dorm housing unit would have resulted in less segregation from

3   penal detainees than in SHU S529, and would have posed a substantial safety risk to plaintiff,

4   who was a known sex offender.  (Id. ¶ 16.)

5       Inmate programs at the HCCF include education and life skills programs, substance

6   abuse treatment, library services, a law library, religious programs, and work programs.  (Id.

7   ¶ 6.)  All inmates at the HCCF have access to medical, dental, and mental heath care.  (Id. ¶

8   7.)  While in protective custody in SHU S529 plaintiff enjoyed all of the privileges afforded

9   other detainees housed in that unit, including access to his attorney, the dayroom, the law

10  library, visitation, recreation, and medical and mental health treatment.  The privileges

11  plaintiff enjoyed while in SHU S529 were equivalent to those enjoyed by inmates in the

12  general population housing unit, and were greater than those enjoyed by inmates in

13  administrative segregation.  (Id. ¶ 17.)

14      Based on the above, defendants argue that SHU S529 was the least restrictive housing

15  they could provide for plaintiff while also providing for the HCCF's legitimate, non-punitive

16  interests related to maintaining jail security (including plaintiff's own safety), ensuring

17  plaintiff's presence at his commitment proceedings, and the effective management of the

18  HCCF.

19      In response, plaintiff argues that defendants have not shown that his placement in

20  SHU S529 was not punitive, because they have not produced evidence showing they were

21  unable to provide him with less restrictive housing separate from penal detainees and/or

22  prisoners, such as housing plaintiff in administrative segregation apart from all other inmates

23  but not subjecting him to the loss of privileges that is normally concomitant with such

24  housing placement.  Plaintiff, however, has not produced evidence to counter defendants'

25  evidence that the decision to place him in SHU S529 was based on legitimate, non-punitive

26  interests, and that the restrictions he faced there were not excessive in relation to those

27  interests.  See Hydrick, 500 F.3d at 997 (setting forth requisite showing with respect to

28  conditions of confinement of SVPs).

18

The Court finds defendants have produced evidence sufficient to rebut the presumption that the conditions of confinement to which plaintiff was subjected in SHU S529 were punitive, and that plaintiff has failed to carry his burden of demonstrating a genuine issue of material fact with respect thereto.  Plaintiff's sole argument is that, as a matter of law, defendants violated his constitutional rights because he was not housed separately from penal detainees and/or prisoners; in other words, he claims that the incarceration of SVPs with those who are facing or have been convicted of criminal charges is unconstitutional *per se*.  Plaintiff does not cite, nor is this Court aware of, any United States Supreme Court or Ninth Circuit case that so holds.  Rather, the case law to date leads to the conclusion that there is no *per se* prohibition on housing SVPs in facilities where criminal detainees or convicts are also housed.  In Seling v. Young, 531 U.S. 250 (2001), for example, the United States Supreme Court upheld the constitutionality of a state civil commitment statute pursuant to which SVPs were held in segregated housing in prison facilities.  See id. at 261.  Similarly, the Ninth Circuit, in Jones v. Blanas, declined to hold that SVPs may not, consistent with the Constitution, be held in jail facilities, finding instead that the dispositive question when assessing an SVP's constitutional challenge to his conditions of confinement is whether those conditions are punitive.  See Jones, 393 F.3d at 932; see also Munoz v. Klender, 208 F. Supp. 2d 1125, 1144 (S.D. Cal. 2002) (holding SVP's detention in county jail while awaiting recommitment proceedings did not violate due process; noting "the need to safely produce dangerous detainees for judicial proceedings and associated logistical challenges support the use of local law enforcement detention facilities for that purpose and do not run afoul of any constitutional right [plaintiff] has identified").

In sum, defendants have produced evidence sufficient to rebut the presumption that the conditions of plaintiff's confinement at the HCCF were punitive, and plaintiff has not carried his burden of producing evidence that creates a genuine issue of material fact with respect thereto.  Accordingly, defendants are entitled to summary judgment on plaintiff's due process claim.

//

3.      Qualified Immunity

Defendants argue, in the alternative, that they are entitled to qualified immunity with respect to plaintiff's claim that he was unlawfully housed with penal detainees and/or prisoners.[8]  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Burns v. Reed, 500 U.S. 478, 495 (1991) (internal quotation and citation omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a sequence of questions to be considered in determining whether a defendant is entitled to qualified immunity.  As an initial matter, the district court must consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  If no constitutional right was violated if the facts were as alleged by the plaintiff, the inquiry ends and the defendant prevails.  See id.  In the instant case, as a matter of pleading, plaintiff's complaint sufficed to allege a due process violation; as discussed above, however, the evidence in the record does not establish a due process violation, and, accordingly, there is no need to further address the question of qualified immunity.

Assuming, arguendo, the evidence has established a constitutional violation, the court must proceed to the next sequential step in the qualified immunity analysis and ask whether the constitutional right that was violated was clearly established at the time of defendants' actions.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  The Ninth Circuit has made clear that the

---

[8]Defendants properly assert the qualified immunity defense only with respect to the claims raised against them in their individual capacities.  See Brandon v. Holt, 469 U.S. 464, 472-73 (1985) (holding qualified immunity defense not available to defendants sued in official capacity).

right of SVPs not to be subjected to punitive conditions of confinement in violation of the Fourteenth Amendment was clearly established at the time of defendants' actions herein.  See Hydrick, 500 F.3d at 998 & n.16 (relying on Supreme Court's decisions in Youngberg v. Romeo, 457 U.S. 307 (1982) (establishing due process requirements for conditions of confinement for civil committees), and Bell v. Wolfish, 441 U.S. 520 (1979) (establishing due process requirements for conditions of confinement for pretrial detainees) to find, in case alleging due process violations dating back to 1998, "it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs")**.**

Where the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  Saucier, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."  Id. at 205.  As discussed above, officials can rebut the presumption of punitive conditions of confinement for an SVP by showing that legitimate, non-punitive interests justified the conditions to which the SVP was subjected, and that the restrictions imposed upon the SVP were not excessive in relation to those interests.  See Jones, 393 F.3d at 934.  Here, defendants have produced undisputed evidence showing (1) they used their professional discretion to determine where plaintiff would be housed at the HCCF based on the need to maintain jail security (including plaintiff's own safety), ensure plaintiff's presence at his commitment proceedings, and effectively manage the HCCF, and (2) plaintiff was not subjected to restrictions that appeared to be excessive in relation to defendants' legitimate concerns.  Based on this undisputed evidence, the Court finds that even if plaintiff's placement constituted a constitutional violation, defendants could have reasonably, albeit mistakenly, believed that their decision to house plaintiff with penal detainees and/or prisoners in the protective custody unit was lawful.  Accordingly, defendants are entitled to qualified immunity.

///

///

21

D.    Transcor's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

Plaintiff claims his right to due process was violated when, on two separate occasions, Transcor transported him in a van in which he was not segregated from penal detainees and/or prisoners.[9]  (Compl. at 8.)  Transcor moves to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment pursuant to Federal Rule of Procedure 56.  Because the Court, in reaching its decision, relies on facts outside of the pleadings, the motion will be decided as a motion for summary judgment.  See Fed. R. Civ. P. 12(b)(6).

1.    Undisputed Facts Regarding Plaintiff's Transfer by Transcor

The following undisputed facts regarding plaintiff's transfer from Atascadero State Hospital to the HCCF by Transcor on March 24, 2003, and from the HCCF back to Atascadero State Hospital on June 1/June 2, 2004, are derived from the allegations in plaintiff's verified complaint, and from the declaration of Larry Coates ("Coates") submitted by Transcor in support of its motion for summary judgment.

Transcor is a private corporation that provides transportation services for various law enforcement agencies throughout the United States.  (Decl. Larry Coates Supp. Transcor's Mot. Summ. J. ("Coates Decl.") ¶ 5 & Ex. A.)  As Director of Internal Affairs for Transcor, Coates oversees the operational details for the transportation of persons confined by the State of California from one facility to another.  (Id. ¶ 6.)

On March 24, 2003, plaintiff was picked up by Transcor at Atascadero State Hospital for transfer to the HCCF for civil commitment proceedings under the SVPA.  (Compl. at 8.) Plaintiff arrived at the HCCF on March 25, 2003.  (Id. at 6.)  On June 1, 2004, plaintiff was picked up by Transcor at the HCCF for transfer back to Atascadero State Hospital.  (Id. at 8; Coates Decl. ¶ 19.)  Plaintiff arrived at Atascadero State Hospital on June 2, 2004.  (Coates

_____

[9]Plaintiff states his claim is based solely on Transcor's placement of plaintiff with penal detainees and/or prisoners in the van in which he was transported; he expressly states he is not challenging Transcor's use of restraints during his  transport, or his placement with penal detainees and/or prisoners at the Salinas County Jail, where Transcor stopped en route from Atascadero State Hospital to the HCCF.  (Opp. at 5 ¶ 4, 13 ¶¶ D & E.)

United States District Court
For the Northern District of California

Decl. ¶ 19.)  Plaintiff was not separated from penal detainees and/or prisoners when he was transported by Transcor in March 2003 and June 2004.  (Comp. at 8.)

On both occasions, plaintiff was transported in a van that could hold up to twelve other individuals, in addition to a driver and other support personnel.  (Id. ¶ 7.)  The van was divided into three compartments, capable of holding, respectively, eight individuals, three individuals, and one individual; the three compartments are separated from each other by metal walls such that it is not possible for a transportee in one compartment to make physical contact with a transportee located in any other compartment.  (Id.)  The exact seating arrangement of the persons being transported on a given journey is based on the determination of how best to maintain security and safety of all occupants of the van.  (Id.)  While individuals are being transported in a Transcor van, they are restrained in order to prevent any person from being able to physically harm another person, and so that Transcor employees can maintain control over the persons being transported, as there are more individuals being transported than Transcor employees present in the vehicle.  (Id. ¶ 8.)  If Transcor did not have the ability to determine where any particular individual would be seated during a transport, the safety of all passengers and Transcor's employees would be jeopardized.  (Id. ¶ 11.)

2.    Statute of Limitations

Transcor argues that plaintiff's claim with respect to his transport on March 24, 2003 is barred by the applicable statute of limitations.  As discussed earlier in this order, the Court has determined that plaintiff is entitled to equitable tolling of the statute of limitations for the period of time he was confined at the HCCF awaiting adjudication of his status as an SVP.  Accordingly, for the reasons stated previously, the Court finds plaintiff's claim is timely.

3.    Plaintiff's Due Process Claim

Plaintiff alleges that Transcor, acting under contract with the State of California, violated his right to due process by transporting him with penal detainees and/or prisoners.  Transcor argues it did not violate plaintiff's constitutional rights for the following reasons: (1) the due process requirements applicable to an SVP's conditions of confinement do not

23

United States District Court
For the Northern District of California

apply to the manner in which an SVP is transported from one location to another, and (2) even if such due process requirements do apply, legitimate, non-punitive interests justified the manner in which plaintiff was transported, and the restrictions imposed upon plaintiff were not excessive in relation to those interests.

At the outset, the Court must determine whether Transcor, a private corporation, was acting as a state actor subject to liability under 42 U.S.C. § 1983 when it transported plaintiff. An essential element of an action brought under § 1983 is that the defendant accused of violating the plaintiff's constitutional rights acted under color of state law.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980).  Action taken by private individuals or organizations may be under color of state law "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295-96 (2001) (internal quotation and citation omitted).  Here, Transcor does not dispute that it was acting under color of state law when it transported plaintiff.  Accordingly, for purposes of this order, the Court assumes Transcor is a state actor.

As noted, plaintiff claims Transcor violated his right to due process by transporting him in a van in which he was not segregated from penal detainees and/or prisoners.  Plaintiff points to no case, however, and the Court is aware of none, that holds the transporting of SVPs, or other civilly-detained individuals, under conditions in which they are not segregated from persons charged with or convicted of crimes is unconstitutional *per se*.  Although there exists some support for the proposition that an SVP plaintiff could state a claim for the violation of his constitutional right to personal security were he to allege facts showing he was injured by criminal detainees while being transported, see Bacon v. Kolender, No. 05cv0310 BTM (PCL), 2007 WL 2669541, *12 (S.D. Cal. Sept. 6, 2007), or for a violation of his constitutional right to be free from the use of excessive force were he to allege facts showing officials used excessive means of restraint in transporting him, see Hydrick v. Hunter, 500 F.3d 978, 997-98 (9th Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3410 (U.S. Jan. 17, 2008) (No. 07-958), plaintiff herein makes no such allegations, nor can the inference

of such constitutional injury be drawn from his allegations.

The Court finds persuasive Transcor's argument that <u>Jones v. Blanas</u>, discussed above in connection with defendants Philp and Humboldt County's motion for summary judgment, did not establish that Transcor could not lawfully transport plaintiff with penal detainees and/or prisoners. <u>Jones</u> addressed a claim concerning conditions of confinement incident to the *housing* of SVPs, specifically, whether housing an SVP pursuant to California Penal Code §§ 4001 and 4002(a) constituted punitive conditions of confinement. <u>See Jones</u>, 393 F.3d at 923, 934. The matter of transportation was not at issue in <u>Jones</u>. Similarly, the matter of transportation was not at issue in the Ninth Circuit's subsequent decision in <u>Hydrick</u>, wherein, as discussed above, the Ninth Circuit clarified that the "contours of law" concerning the protections afforded to civil committees and pretrial detainees under the Fourteenth Amendment were clearly established by the Supreme Court's decisions in <u>Youngberg v. Romeo</u> and <u>Bell v. Wolfish</u>. <u>See Hydrick</u>, 500 F.3d at 998 & n.16. In particular, <u>Hydrick</u> observed, it was well-established that a civilly-committed individual could not be subjected to conditions of confinement amounting to punishment. <u>Id.</u> at 997. <u>Hydrick</u> did not, however, address in any manner, let alone the constitutionality of, the propriety of transporting SVPs with penal detainees and/or prisoners. Accordingly, the Court concludes there is no case authority expressly supporting plaintiff's argument that the manner in which he was transported was unconstitutional.

Further, even if the presumption of punishment established in <u>Jones</u> applies to transportation claims brought by an individual such as plaintiff, Transcor argues it has rebutted the presumption of punitive conditions by showing that legitimate, non-punitive interests justified the conditions to which plaintiff was subjected when he was transported, and that the restrictions imposed upon plaintiff were not excessive in relation to those interests. <u>See Jones</u>, 393 F.3d at 934. The Court finds Transcor has rebutted the presumption of punitive conditions by producing undisputed evidence showing that it used its professional judgment in determining where plaintiff would be seated in the van, based on the need to maintain the security and safety of all of the van occupants, and that plaintiff was not

United States District Court
For the Northern District of California

1   subjected to restrictions that were excessive in relation to Transcor's legitimate security

2   concerns.

3        In sum, when the facts alleged by plaintiff are viewed in the light most favorable to

4   him, the Court finds plaintiff has not shown the violation of a constitutional right.

5   Accordingly, as plaintiff has not raised a genuine issue of material fact as to whether his

6   constitutional rights were violated by Transcor, Transcor is entitled to summary judgment on

7   plaintiff's claim.

8        4.    Qualified Immunity

9        Transcor argues, in the alternative, it is entitled to qualified immunity on plaintiff's

10   claims.  The defense of qualified immunity is not categorically available to private actors

11   acting under color of state law, however; rather, courts must look both to the history and to

12   the purposes that underlie the immunity afforded government employees, in order to

13   determine whether such immunity extends to private parties.  Richardson v. McKnight, 521

14   U.S. 399, 404 (1997).  In Richardson, the Supreme Court addressed the question of whether

15   there is a firmly-rooted tradition of immunity warranting extension of the qualified immunity

16   defense to private prison guards.  Finding no such tradition existed, the Supreme Court

17   concluded the defense was not available in the context before it, specifically, one in which "a

18   private firm, systematically organized to assume a major lengthy administrative task

19   (managing an institution) with limited direct supervision by the government, undertakes that

20   task for profit and potentially in competition with other firms."  Id. at 412.

21        Here, Transcor is a private corporation acting in a context substantially similar to that

22   of the private corporation in Richardson.  Accordingly, the Court finds Transcor is not

23   entitled to assert the defense of qualified immunity.[10]  For the reasons discussed below,

24   however, the Court finds Transcor is entitled to assert a good faith defense.

25

26

27   _____

28        [10]The Court is aware of no case, either prior to Richardson or thereafter, in which the
     Ninth Circuit has found a private actor is entitled to qualified immunity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.      Good-Faith Defense

Where qualified immunity is not available to a private actor who is a defendant in a § 1983 action, such defendant nevertheless may assert a good faith defense to liability. Clement v. J&E Service Inc., 518 F.3d 1090, 1097 (9th Cir. 2008).  "A good faith defense fully protects defendants who act in good faith and thus provides them with protections similar to qualified immunity."  Franklin v. Fox, No C 97-2443 CRB, 2001 WL 114438, *5 (N.D. Cal. Jan. 22, 2001).  Application of the good faith defense turns on the defendant's subjective good faith; because good faith is an affirmative defense to liability, the defendant bears the burden of proof.  See id. at *5-6; see also Tarantino v. Syputo, No. C 03-3450 MHP, 2006 WL 1530030, *10 (N.D. Cal. June 2, 2006).

Here, even if the transportation at issue violated the Constitution, Transcor is entitled to the good faith defense because no material dispute exists as to whether it acted in subjective good faith when transporting plaintiff with penal detainees and/or prisoners.[11] Specifically, the evidence does not show that Transcor should have known that its actions violated plaintiff's constitutional rights.  As discussed above with respect to the conditions of plaintiff's transport, there was no case holding an SVP, whether pre- or post-commitment, could not be transported in a manner in which he was not segregated from penal detainees and/or prisoners.  Further, there existed legitimate, non-punitive interests justifying the conditions under which plaintiff was transported, and the restrictions imposed upon him do not appear to be excessive in relation to those interests.

In sum, there is no evidence that Transcor believed its actions were unlawful, nor is there any evidence suggesting Transcor was unreasonable in believing it was acting in accordance with the Constitution.  Accordingly, even if a constitutional violation occurred, Transcor is entitled to the good faith defense and summary judgment will be granted in

---

[11]The Court finds Transcor has not waived its assertion of the good faith defense.  See Clement, 518 F.3d at 1097.  By asserting in its motion for summary judgment that it believed the law did not require plaintiff to be segregated from penal detainees and/or prisoners during transport, Transcor sufficiently put plaintiff on notice that it intended to raise a good faith defense.  See id.

Transcor's favor.  See, e.g., Clement, 518 F.3d at 1097 (finding towing company acted in good faith where evidence showed towing company did its best to follow law and had no reason to suspect its actions would be subject to constitutional challenge); Tarantino, 2006 WL 1530030 at *10 (finding towing company acted in good faith where evidence showed towing company followed city procedures that did not violate clearly established law); Franklin, 2001 WL 114438 at *6-7 (finding private individual acted in good faith where evidence did not suggest she knew she was violating plaintiff's constitutional rights).

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendants Philp and Humboldt County's motion for summary judgment is hereby GRANTED.  (Docket No. 37.)

2.  Defendant Transcor's motion to dismiss or, in the alternative, motion for summary judgment, is hereby GRANTED.  (Docket No. 40.)

The Clerk shall enter judgment in favor of all defendants and close the file.

This order terminates Docket Nos. 37 and 40.

IT IS SO ORDERED.

DATED: August 21, 2008

_____
MAXINE M. CHESNEY
United States District Judge